# CHARLESTON

## ANDERSON *v.* LEWIS, ADMR. &c.

Submitted March 24, 1908.    Decided March 31, 1908.

1. PLEADING—*Plea in Abatement—Grounds—Variance Between Summons and Declaration.*

    Advantage of a variance between the summons and the declaration in an action at law cannot be taken otherwise than by a plea in abatement. (p. 299.)

2. BROKERS—*Actions for Compensation—Evidence—Admissibility.*

    In an action by an agent for the sale of land to recover his commission, evidence of the prices at which adjacent and neighboring lands of the same kind were selling at the time the sale was made is admissible to show that a good price was realized, since it tends to prove faithful and efficient service on the part of the agent. (p. 300.)

3. CUSTOMS AND USAGES—*Amount and Time of Payment—Knowledge of Parties.*

    In the absence of any express agreement as to the amount of payment for work contracted to be done, parol evidence is admis-

sible to show a certain usage of the business, and of the locality, known to the parties, or so general and well settled as to raise the presumption that the parties dealt with reference to the usage, and with a tacit understanding that their rights and responsibilities should be determined thereby. (p. 300.)

4   TRIAL—*Instructions Based on Inadmissible Evidence.*
    It is error to give an instruction based on inadmissible evidence. (p. 302 )

5.  PLEADING—*Bill of Particulars and Copy of Account—Form and Requisites—Entitling in Cause of Action.*
    Evidence is admissible under an account filed with a declaration showing the names of the parties to the action, and the subject matter of which is the same as that of a count in the declaration, and which is otherwise sufficient, notwithstanding omission to endorse on it the style of the action. (p. 302.)

6.  WRIT OF ERROR—*Certificate of Trial Court—Controlling Transcript.*
    The certificate of the trial court to the effect that certain evidence was excluded prevails over an omission from the certificate of the evidence of a note of the ruling. (p. 300.)

7.  BROKERS—*Compensation—Persons Liable—Owner of Undivided Interest.*
    The owner of an undivided interest in a tract of land may bind himself personally to pay a commission on the sale of the whole thereof. (p. 303.)

8.  NEW TRIAL—*Verdict—Inadequacy.*
    A verdict for only about one-half of the amount the uncontradicted evidence tends to prove may properly be set aside by the trial court for inadequacy. (p. 298.)

Error to Circuit Court, Greenbrier County.

Action by S. W. Anderson against J. W. Lewis, administrator. Judgment for plaintiff, and defendant brings error.

*Reversed.   Remanded.*

T. A. READ and J. A. PRESTON, for plaintiff in error.

WILLIAMS & DICE and OSENTON & McPEAK, for defendant in error.

POFFENBARGER, PRESIDENT:

On the 6th day of February, 1907, S. W. Anderson obtained a verdict against J. W. Lewis, administrator of H. A. Lewis, deceased, for the sum of $975.00, in the circuit

court of Greenbrier county, on a declaration in *assumpsit*, for commission on the sale of a tract of land, which, on his own motion, the court set aside for inadequacy. On the second trial, he obtained a verdict and judgment for the sum of $1,950, which Lewis has brought here for review, assigning numerous errors.

He complains of the overruling of his motions to quash the summons, made on a special appearance in both his individual and representative capacities, because it commanded the summoning of "J. W. Lewis, administrator" instead of "J. W. Lewis" or "J. W. Lewis as administrator." He has not properly raised the question. It is one of variance and could be raised only by a plea in abatement. Code, chapter 125, section 15. Before this statute was passed, the practice was to demand oyer of the writ, and, having so made it a part of the record, move to quash. This gave the defendant an undue advantage. His objection could be delayed until the case had been matured for hearing. In order to compel him to make such objections in *limine*, the legislature ordained that he should plead the matter in abatement. He now introduces the writ as evidence under his plea. *Layne* v. *Ohio R. R. Co.*, 35 W. Va. 43; *Barksdale* v. *Neal*, 16 Grat. 314. This is not a case of defect in the summons or return apparent on the face thereof, as in *Fisher* v. *Crowley*, 57 W. Va. 312, and other cases of that kind in which the writ may be made part of the record by having the same read on a demand for oyer thereof, and a basis so laid for a motion to quash for such defect. They are not cases in which "process summoning" the defendant "appears to have been served." This is. Hence the difference.

The special count in the declaration avers an agreement on the part of the defendant's decedent to pay the plaintiff one dollar an acre for selling decedent's land at $20.00 an acre, and the supposed defect is the failure to specify the number of acres sold. After setting out the agreement and averring performance thereof, it avers a promise to pay $3,-000.00 in consideration thereof. If not good as a special count, it has all the requisites of a good common count for work and labor, and the court properly overruled the demurrer.

Objection to the introduction of evidence is based upon the supposed variance between the writ and declaration, not upon any variance of the evidence from the declaration. Its untenableness is sufficiently obvious to relieve us from comment thereon.

Harvey A. Lewis, the decedent, and others, owned nearly 2000 acres of land adjoining a tract of about 3000 acres, owned by Anderson. Thinking the lands would sell together more advantageously than separately, an agreement to sell them together was made, and Anderson authorized to sell the Lewis land along with his own, and he sold both tracts to A. N. Campbell for Joseph Beury, for about $100,000.00, of which $25,000.00 was paid to Anderson, who immediately gave Lewis a check for $8,000.00 and, on the execution of the deeds, closing the transaction, Lewis received two notes for the sum of $15,508.00 each, amounting in the aggregate to $31,016.00, which, added to the $8,000.00, paid in cash, made the amount realized by Lewis $39,016.00, just about the equivalent of 1950 acres and 129 poles, the quantity of land sold, at $20.00 per acre, the price at which it was sold. None of the facts are controverted. Evidence was adduced to prove the value of the service and a rule or custom in the community under which five per cent was usually paid for such service.

As has been stated, the verdict on the first trial was set aside on the motion of the plaintiff, because, in the opinion of the court, it was only about one-half the amount plaintiff was entitled to recover. Four credible and disinterested witnesses testified to five per cent or $1.00 an acre as being the value of the services rendered and no witness said it was worth less.

Plainly, therefore, in respect to its amount, the verdict was against the weight of the evidence, if it can be said there was any conflict. The action of the trial court in setting aside such a verdict cannot be disturbed by the appellate court. *Reynolds* v. *Tompkins*, 23 W. Va. 229. The action of the trial court must be plainly erroneous to justify this Court in reversing it. *Coalmer* v. *Barrett*, 61 W. Va. 237.

C. W. Dillon said he thought he knew the usual and customary charge for selling land in Fayette and Greenbrier

counties, but not in the particular locality of the lands sold, and then stated what it was. He also admitted that the price varied with the character of the land and sizes of the tracts. A. N. Campbell said he had never known anybody to get less than five per cent and that the compensation ranged from that up to one-half. P. M. Snyder said he had bought and sold land and had gotten five per cent in almost every instance, but had gotten less. Henry Gilmer said his observation was that the customary price was never less than five per cent. D. C. Davis' testimony was very similar to that of the others. Most of these witnesses further testified that the service was worth five per cent or $1.00 an acre. Of course it was proper to allow them to give their opinions as to the value of the service, it having been first shown that they were conversant with business of that kind and knew the value of like services; but it was clearly inadmissible for the purpose of proving a custom, because it was a local custom, if any, not shown to have been so generally operative as to warrant the inference of knowledge thereof on the part of the decedent, nor to have been, in fact, known to him. The evidence took the form and character of proof of custom and must have been so regarded by the jury. It went far beyond the function of conveying to the jury the opinions of the witnesses as to the value of the service. The rule, respecting the admissibility of evidence of customs is stated in *Johnson* v. *Burns*, 39 W. Va. 658, as follows: "Where a contract does not provide in a given particular, particular local custom may be proven for its interpretation, so it be brought home to the knowledge of the person to be affected by it, and so it does not violate fixed statute or common law." *Hansbrough* v. *Neal et als*, 94 Va. 722, a well considered case, declares the rule to be as follows: "In the absence of any express agreement as to the amount or time of payment for work contracted to be done, parol evidence is admissible to show a certain usage of the business, and of the locality, known to the parties, or so general and well settled as to raise the presumption that the parties dealt with reference to the usage, and with a tacit understanding that their rights and responsibilities should be determined thereby." To the like effect see *Richlands &c. Co.* v. *Hiltebeitel*, 92 Va. 91; *Gov-*

*ernor &c.* v. *Withers*, 5 Grat. 24; Wharton, Law of Ev., section 692. There may be a vast difference between the value of any given service and a price fixed by special contract, and the establishment of a custom or usage, as to the amount of compensation, as part of a contract, fixes and determines the amount, and the jury must then find that amount, not what they believe, from the evidence, the service was worth. Hence, it is important to observe strictly the rule and conditions under which such evidence is admissible, and, in our opinion, the testimony in question here was not such in character as to bring it within the rule.

Anderson was permitted to prove, over the objection of the defendant, the presentation of his claim before a commissioner on the settlement of the estate of H. A. Lewis. The object of this was to repel the inference of gratuitous services or payment or satisfaction in some way, arising from failure to assert the claim in the lifetime of Lewis, and to sue for it until after his death and other circumstances. As it was conduct tending to negative inferences and presumptions arising from conduct, we think it was admissible for that purpose only, and the defendant, by asking a proper instruction, could have had its probative force and effect so limited. In not asking it, he impliedly expressed his belief that the jury understood its purpose. The objection is not well taken.

No error is perceived in the admission of evidence showing what other lands of the same kind and in the same community sold for, and the realization of a good price. These are circumstances bearing on the character of the service rendered and proving it to have been faithful and efficient.

Objection was made to the introduction of evidence, because the account filed with the declaration did not bear the style of the action or any other mark by which it could be, in express terms, connected with the action. But it was filed with the declaration and bore an endorsement by the clerk to the effect that it had been filed, and was relied upon as an account at the trial. Moreover, its subject matter was the same as that of the declaration. We think it was sufficient. It is impossible to conceive how the defendant could have been mislead by it.

Plaintiff's instructions Nos. 1 and 2 were predicated on the inadmissible evidence of custom, and for that reason, should have been refused. If, however, the insufficiencies in this evidence should be supplied on the new trial, and it should be uncontradicted, the assumption of a fact fully proved by uncontradicted evidence would not vitiate them. The court may properly assume the existence of such facts in giving instructions. *St. Louis &c. Ry. Co.* v. *Highnote*, 84 S. W. 365; *Bank* v. *Sargent*, 59 L. R. A. 296.

Another complaint is founded on the refusal of the court to give the following instructions, asked for by the defendant:

"No. 3. The Court further instructs the Jury that no statement made in this cause by the plaintiff as a witness, of any personal transaction or communication had between the plaintiff and Harvey A. Lewis, during the lifetime of said Lewis, touching or concerning the matters involved in this suit, should be considered by the jury in making up their verdict."

"No. 4. The Court further instructs the Jury that under the evidence in this case, they should not charge the estate of H. A. Lewis, deceased, or his administrator, with any part of any commission or compensation to plaintiff or any sale of the interests in said lands owned by either Mary Lewis or Jacob H. Lewis." The court certifies the following reasons for refusing them:

"But the court sustained the plaintiff's objection to the defendant's instruction No. 3, because the jury was instructed during the trial when the plaintiff made any statement as to a personal transaction or communication between him and Harvey A. Lewis to disregard such statements, and all such statements were stricken out and no such statement went to the jury.

"And as to No. 4, because there was evidence tending to show that Harvey A. Lewis had agreed to pay $1.00 per acre on the entire tract, and if the jury believed there was such a contract, the plaintiff would be entitled to recover such compensation against Harvey A. Lewis, even if Mary A. and Jacob H. Lewis did own small undivided interest in the tract, Harvey A. Lewis being interested in the whole tract could bind himself by a contract to pay

for selling the whole tract." This certificate must prevail over the transcript of the evidence, which fails to show the exclusion of the evidence referred to in instruction No. 3. To harmonize it with the certificate of the evidence, we may treat it as a correction of an error on the part of the stenographer. We might further say that the rulings of the court need not be, and are not always, noted by the stenographer. The exception founded on the refusal to give instruction No. 4 seems to have been abandoned, but, if not, it is clearly untenable.

For the errors herein noted, the judgment will be reversed, the verdict set aside and the case remanded for a new trial.

*Reversed. Remanded.*